Good morning, Your Honors. May it please the Court, David Merrill and with me is Joshua Dickey on behalf of the appellant Lorillard Tobacco Company. Your Honors, the reason we are here today is because the defendant is selling counterfeit packs of Newport cigarettes. So you brought exhibits? I brought exhibits, Your Honor. Was that an exhibit that was before the district court? The photographs of these exhibits were before the district court, yes, Your Honor. It would be nice if you just showed us what was before the district court rather than something different from what was before the district court. The photographs of these exact exhibits are in the excerpts of record, Your Honor. While you may think this case is about those cigarettes, before we even get to that point, what we're interested in as a preliminary matter is whether we even have jurisdiction to hear about those cigarettes. So I would appreciate it if you would proceed with that point. I agree with that. Your briefs are complete as to the problem, but they're very scanty as to jurisdiction. I'm sorry, Your Honor, to hear? Your briefs are complete as to the problem, but they're scanty as to jurisdiction, and that's our main issue here is jurisdiction. So if you could focus on that, I join with Judge McKeown that that's the important issue as I see it. Absolutely. I will then focus on jurisdiction. This court does have jurisdiction. Well, you don't have any Ninth Circuit authority for that, correct? That is correct. Also, could you include in that, because you have Third and Sixth Circuit authority, correct? Third and Second Circuit, I believe, Your Honor. You lost the Second Circuit. The Second Circuit is the flip side of this case. It dealt with the granting of an ex parte seizure order as opposed to the denial of an ex parte seizure order. The Third Circuit in Vitan v. White dealt with the denial of an ex parte seizure order and concluded, based upon the plain language of the statute, that the court had jurisdiction to entertain an appeal of an ex parte seizure order. Well, let me ask you this, too, just so that you can incorporate this in the jurisdiction. Congress has amended 15 U.S.C. 1116d on two occasions, at least, correct, since these decisions have come out. What is the effect of Congress not talking about these decisions when they have made amendments? Isn't Congress presumed to know that they are out there? I believe Congress is presumed to know that they are out there, and maybe the reason Congress didn't address it is because they didn't disagree with the positions set forth in the Third Circuit case. The plain language of the statute provides that ex parte seizure orders are injunctions. They are injunctive relief. And where does it say that in Section D? 15 U.S.C. Section 1116 is entitled injunctive relief. Section D... Well, first of all, we don't go by titles, and that has no statutory import. So I have to look at the language of the statute, not the title. Understand, Your Honor, Section D authorizes the district court, and I quote, upon ex parte application, end quote, to, and I quote, grant an order under subsection A of this section, providing for the seizure of goods and counterfeit marks as a means of making such marks. 15 U.S.C. Section 1116a states, gives the district court, and I quote, the power to use the word injunction when it wishes to use the word injunction. And in the section before us, it doesn't use the word injunction. It says, an order. Now, I think you're right if they had said, grant an injunction under subsection A, you would be right. But in Section  D, can't this also be interpreted to mean an order does not mean an injunction? I respectfully disagree, Your Honor. I know, and I want you to answer it, because we don't have anybody on the other side, and that's what they'd be arguing. I understand. We've had several offers, clerks, judges. So it's sort of odd to have one party here. So you have a wonderful situation, so you can capitalize on it. It is unusual. And the title of it is not what's critical. An injunction, because it doesn't reference injunction, an injunction under subsection A could mean a temporary restraining order. My counter to that would be, because it doesn't say temporary restraining order, can temporary restraining orders not be entered by the district court? Of course they can, because a temporary restraining order is a type of injunction. But it's not appealable. It's not appealable unless the practical effect of it is to foreclose the relief, which this Court has held. It makes it appealable. The issue, that's the second part of the injunction of the jurisdictional argument. First is whether is it an injunction or is it not an injunction. And by specifically referring in subsection D to entering an order under subsection A, which talks about injunctions, then, yes, it is an injunction. It is injunctive relief. It may not be called injunction, but neither is a temporary restraining order. Well, I guess the different, you know, the apropos of the temporary restraining order, which, of course, can be issued ex parte on occasion, this is issued section 1116A talks about injunctions which are granted upon hearing and after notice to the defendant, which we don't have here, which would suggest that this is not an injunction. The section I believe you're referring to, the sentence I believe you're referring to is discussing 1116A, talking about the service requirements and how it is served if it's done without notice and after a hearing, or with notice and after a hearing. I think that also cuts in our favor, that it recognizes that sometimes there are cases that are not granted upon hearing and after notice, and without a hearing. Well, but isn't – wouldn't an injunction – wouldn't you have to read 1116A about injunctions in concert with Rule 65 of the Federal rules, which sets out quite specifically what an injunction is and what is required in terms of notice? Absolutely. And as the Vitan case points out in the legislative history of this, Congress specifically referenced Rule 65 and referenced the standards under Rule 65, and so that they applied those standards to an ex parte seizure order, but just modified it or tweaked it a little bit in order to deal with the ex parte nature of it and to provide a level of comfort or whatever it is to the defendant. But what if – you know, Congress also – you know, we could say that it's unclear whether this is an injunction or not an injunction, because as has been demonstrated, arguments could be made on both sides. If we determine that the language of the statute is ambiguous, what's the effect of a statement in the House report that a seizure is not the same as an injunction? Well, first of all, I don't believe it is ambiguous, because the – because the plain language of the statute in subsection D does refer to subsection A, which talks about injunctions. But if it is ambiguous, the Third Circuit again in Vitan addresses that issue in the House report about it not being an injunction, and it dealt with the due process rights of the defendants in that situation. It was an isolated statement in there, and the Third Circuit concluded, based upon the other circumstances, the other discussions of Rule 65 in particular, that it was – it still was an injunction. Let me ask you a question. You know, we get problems. It says order but means injunction and et cetera. Why not look to our own cases of what we define an injunction as? And that brings us to Orange County, which I think is a well-written decision. Excellent, Your Honor. Absolutely. In which we have three fundamental characteristics of the injunction. Now, it seems to me that if you could show that what happened here fits within those three characteristics, you might be home free. But as I read them, I think you have a real burden. Could you turn to Orange County and first tell us why it's directed to a party? Obviously, here it's not directed to a party. Number two, it's enforceable by contempt. Can this be enforced by contempt? This order. The granting of an ex parte seizure, I don't know that it would be able to be enforced by contempt. There isn't any way it could be. And number three, it's designed to accord or protect some or all of the subsidy relief sought by a complaint in more than a preliminary fashion. There's no complaint in this case, is there? There is a complaint that was filed in conjunction with the ex parte seizure. And how is it designed to protect some or all of the subsidy relief sought by the complaint? Well, it clearly fits within that section. I'll answer your question directly. It's designed to protect the relief set forth because Congress specifically concluded and found that if notice is given in these situations where you have counterfeiters, they will hide, destroy, or move the evidence. It's very difficult to prove and prosecute these cases. That's how it fits within there. But getting back to Orange County, Orange County, my understanding, is based off of the three factors set forth in Carson v. American Brands. Carson dealt with a situation where it was a consent decree that had injunctive relief wrapped up into it, and the court was looking at, well, is this injunctive relief, is this not injunctive relief? We don't even get to Carson. We don't even get to those factors because the plain language of the statute, again, says this is injunctive relief. And that's what the Third Circuit concluded, and I think that's consistent with the plain language of the statute. But the Second Circuit case is consistent with Orange County. The Second Circuit case is the flip side of this case. But it's consistent with Orange County. Is it fair to say that there's a division in the circuits on this issue? No, Your Honor, I don't think it is fair to say there's a division. The Second Circuit case deals with the granting of an ex parte seizure order. And in that case, looking at the two, the second two factors in Carson, the court concluded that there is not a serious irreparable consequences because this person's goods have been taken away, nor are there, it can effectively only be challenged by appeal. That's the opposite of this case. There are serious irreparable consequences if we are not entitled to do our ex parte seizure order. Well, maybe you need to explain that specific to your type of case because these type of cases don't come up that much. That's correct. Because obviously you're sort of saying, you know, if you don't want what's good for the goose is good for the gander, you just want it for you. And everyone wants interlocutory appeals. And, I mean, just this week it seems like that's what everyone wants you to do. With respect to this situation, this circumstance in particular, based upon the statute that Congress enacted, concluded that counterfeiting is an epidemic. It's becoming a real problem. And one of the most effective ways to stop counterfeiting actually stems back to a Second Circuit case regarding Vuitton as well, where they were talking about doing ex parte seizures before the statute was enacted. And the court in that case had determined that too often if notice is given, the goods are hidden, destroyed, or moved. In this case, these are counterfeit. If they're counterfeit, they're substantially indistinguishable, which is the situation we have here. Irreparable harm is presumed. It's harming our goodwill. It's harming, because there's a likelihood of confusion, it harms our goodwill. Irreparable harm is presumed in that situation. That's where the serious and irreparable harm is, and that if we have to give notice, the goods will be destroyed or moved or hidden. And that's the situation, that's how the Third Circuit case in Vuitton distinguished the Second Circuit case in General Motors Corp. But, you know, you have, but you have in the case of, let's say the motion were granted. Then you'd go out and you'd gather up all these cigarettes, right? That's correct. And you'd then have another party on the other side, correct? That's correct. So in the denial case, we're in this odd circumstance where we have ex parte. And can you think of any other ex parte orders that come on appeal to this court other than, you know, the extraordinary TRO situation? I can't, Your Honor. It is an unusual situation of appealing an ex parte order. However, given the plain language of Congress, who also sets this court's jurisdiction, the plain language of the statute clearly makes ex parte orders an injunction. Is it unusual? I mean, I think the problem I'm having is that I appreciate your argument about trademark and irreparable harm and trying to get these goods. But that, if the district, the real issue is can you appeal that? In other words, it's not that you don't have a legitimate complaint, assuming that, you know, you meet all the criteria. But if the district court denies the order, as they did here, you know, why should we be looking at that? Because the district court has made a determination that there's not going to be a seizure order. You can still go in, even in the face of denial, and have a TRO or an injunction order that might be issued, correct? That's true. But once we go in, we have to give notice. And that's the critical thing that Congress concluded in the Trademark Counterfeiting Act of 1984. Once notice is given, our relief under the statute is thwarted. The ex parte relief under the statute created by Congress is thwarted once the notice is given. That's the distinguishing thing. That's why it needs to be done without notice. And that's what also distinguishes this from a temporary restraining order. With a temporary restraining order, as Your Honor points out, if it's denied, you can go ahead and you can file a preliminary injunction. If the preliminary injunction is then denied, then, of course, under 1292A1, you can go ahead and appeal to this circuit. In this situation, with a denial of an ex parte seizure order, once it's denied, that right is gone. That relief that Congress authorized us to do is gone because then we have to give notice and the game is up. Well, I mean, the game isn't necessarily up. You have the certain amount of the goods obtained by your investigator or your undercover assistance that can be used, and you can get an injunction. And it may turn out, for example, that on the injunction order, the district court will have to decide again the same issue you want us to decide, which is, you know, do you have to look inside the packs or can you just look outside the packs? Why wouldn't that be the time to appeal this where you've got basically, you know, two sides to argue the merits or the likelihood of success on the merits? Again, the reason that's not the time to appeal is because Congress recognized that once you give notice, that that is very harmful because the goods will be hidden, destroyed, or moved. And our ability to go in and seize those goods, while we may have a couple of cartons of goods, of course we want to get those goods, those counterfeit goods with our trademark, get them and get them out of the stream of commerce. And Congress recognized because of the problems with counterfeiting and how much of an epidemic it has become and how many billions of dollars are being lost in counterfeit goods, particularly counterfeit cigarettes, in this situation, we need to be able to go in without notice. And that's the situation. But it seems to me that's a distinguishable argument from whether or not we have jurisdiction on appeal. Well, I guess, too, I'm hearing what Judge McKeown is saying and then I'm hearing what you're saying in that if you don't win and you have no remedy and you can't challenge that prior to having to go public, you're ruined. Is that essentially what you're saying? I'm not saying you're ruined, but what I'm saying is we have lost an essential right that has been authorized and created by Congress to specifically address situations like this. And because Congress recognized this as an injunction, I believe Congress recognized the ability to appeal, and that's consistent with the Third Circuit's opinion in Vuitton. Let me ask you a practical problem. We're going to make an opinion on this, and obviously the circuit needs some direction, so we'd have to publish it. But everything so far has been in camera. If we put the other person's name on, I'm not sure what you win on this appeal. I haven't had this come up to me, although I've been around for 30 years. It still hasn't happened before. How do you suggest that we handle the publication of any disposition? The publication of any disposition, one, could also always be done after the seizure order is effected. Once the seizure order is effected, the seal in the district court is lifted and everything becomes open at that point. Okay, but you're assuming first that we say we have jurisdiction, and then you're also assuming that you win, okay? Of course, sure. Because we could say we have jurisdiction, but then the next step of it I think is a little more complicated. Well, not more complicated, but is also complicated, because I looked at what you presented, and it looks like that there was a little bit of a tug-of-war going on at the district court. Why wouldn't I look at that and say the district court said, hey, I want more, and you just chose to put on what you put on, and the district court said, hey, that's not enough to convince me. You have not satisfied me that I should issue this order, injunction, whatever you want to call it. I mean, for you to prevail there, it seems to me you have to convince us that I don't think you had to prove it was counterfeit if that was the legal error the court made, but I can't tell from this record that the court didn't just say, hey, this isn't enough for me. You decided you wanted to put on what you wanted to put on, and I guess you alleged that if you put on what the court said that you put on that it would violate trade secrets, but I don't see why you couldn't have put on an expert just to come in and say, you know, I examined this chemically, and, you know, it's counterfeit. I mean, you wouldn't have to go further than that. That's what the court wanted, right? Not necessarily. What the court wanted was analysis of the inside of the PACS. However, the trademarks are on the outside of the PACS, and whether it's counterfeit is determined by a visual inspection of the trademarks of the PACS, and it's determined not by an expert but by the... Well, that's one way. I mean, could a chemist come in or could an expert come in? A chemist or an expert could come in, but... That's another way, right? That's not the burden. The burden here is we have to show a likelihood, likely to succeed, that the PACS are counterfeit. We had testimony... But what if the court just didn't believe your... What if the court just didn't think your experts were that, or, you know, the people that you called in, the court just said, hey, that's not enough for me. You know, I'm not satisfied under that burden. How do you, you know, isn't that an abuse of discretion? If that's what happened, isn't that an abuse of discretion? No, Your Honor. He applied the wrong legal standard. He said in his report... Well, that's what you have to show to win. But if it's just an issue that he said your evidence didn't measure up... Sure, but to show to win is that he applied the wrong legal standard. He said you have to prove conclusively through expert testimony that these are in fact counterfeit. That's not the standard. The standard is likely to succeed. It would be in a regular civil case in front of a bench trial where the judge... The standard is likely to succeed what? But what do you have to be likely to succeed on? That the goods are counterfeit. Okay. Well, let me ask you this. Would you have a claim even if, for seizure, even if the packages were counterfeit packages? Let's say they were gray market cigarettes inside but in packages that were in fact counterfeit labeling. Would you still have a basis for seizure? Absolutely. And let me first address the issue about the cigarettes being inside. In the declaration of Mr. Mooring, which is in the record, he testified about the security procedures that are set up. And these procedures are done by ATF, the IRS. I mean, these are highly regulated. You can't just be taking cigarettes out and selling them on the street because of the tax implications of that. And he testified about the security. And he also testified it would be virtually impossible to get cigarettes out of the plant and put them in counterfeit packs. The other response, which we also mentioned in our brief, is assuming that was possible to happen, which is that it did happen, if they're repackaged in counterfeit packs and not disclosed that they are repackaged, that's under the Preston Nets Cody line of cases, that would still be trademark infringement, and we would be able to go ahead and get a seizure in that situation. Thank you. Thank you, Your Honor. The case of Lorillard Tobacco is submitted and will adjourn for this morning. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you.    Thank you. Thank you.
judges: Wallace, McKeown, Callahan